SUPREME COURT OF ARIZONA
In Division

| | |
|---|---|
| GARY GRIFFITH, | ) Arizona Supreme Court |
| | ) No. CV-10-0197-AP/EL |
| Plaintiff/Appellant, | ) |
| | ) Graham County |
| v. | ) Superior Court |
| | ) No. CV2010-00136 |
| R. RENE BACA, an individual, | ) |
| Real Party in Interest; JUDY | ) |
| DICKERSON, in her official | ) |
| capacity as Graham County | ) **O P I N I O N** |
| Elections Officer; GRAHAM COUNTY | ) |
| BOARD OF SUPERVISORS; WENDY JOHN, | ) |
| in her official capacity as | ) |
| Graham County Recorder, | ) |
| | ) |
| Defendants/Appellees. | ) |
| | ) |

Appeal from the Superior Court in Graham County
The Honorable Wallace R. Hoggatt, Judge

**AFFIRMED**
_____

Gary Griffith                                              Safford
In Propria Persona

GAMMAGE & BURNHAM PLC                                       Phoenix
    By   Lisa T. Hauser
         Carolyn V. Williams
Attorneys for R. Rene Baca
_____

**B A L E S**, Justice

¶1      Gary Griffith challenged the qualifications of R. Rene Baca as a candidate for justice of the peace, the superior court rejected the challenge, and Griffith appealed. We issued an order affirming the judgment of the superior court; this opinion

explains our reasoning.

## I.

¶2 Griffith is justice of the peace in Graham County Justice Precinct No. 1 (JP1). He challenged Baca's nominating petitions pursuant to Arizona Revised Statutes ("A.R.S.") section 16-351 (2006) arguing that Baca was not a qualified elector or resident in JP1 when he filed his nomination papers.

¶3 After an evidentiary hearing, the superior court made the following factual findings, which are not disputed here. Before May 4, 2010, Baca lived with his wife and two children in a house (the "Pheasant Lane house") in Thatcher. This house is in Graham County Justice Precinct No. 2 (JP2). On April 28, 2010, Baca was registered to vote at the Pheasant Lane house in Graham County election precinct 18. That day he submitted an early ballot for the May 18, 2010 statewide special election regarding Arizona's sales tax. (Baca's early ballot was later processed and counted in precinct 18.) On April 28, 2010, Baca also decided to run for justice of the peace in JP1.

¶4 On May 3, 2010, Baca went to the Graham County Recorder's Office and submitted a new voter registration form to change his party affiliation to "independent." Baca listed his address as the Pheasant Lane house. The next day, when someone told him that he lived in JP2, Baca said he would "just move, then." Baca had decided months earlier to move closer to

2

Safford and had been trying to sell the Pheasant Lane house. On May 4 or 5, Baca returned to the Graham County Recorder's Office. Baca told the Recorder that he listed the "wrong address" on the form he filled out on May 3. The Recorder retrieved the form and instructed Baca to cross out the Pheasant Lane address and insert his new address. Baca listed as his new address the home of his mother and stepfather in Safford (the "Relation Street house"). The Relation Street house is in JP1. Baca did not re-sign the voter form.

¶5       In early May 2010, Baca notified the U.S. Postal Service, his bank and credit card companies, Graham County, and others that his address had changed to the Relation Street house. The superior court found that Baca and his family left the Pheasant Street house on May 4 and lived at the Relation Street house until May 15, when they moved to another house, also in JP1, occupied by the parents of Baca's wife. At the time of the trial, Baca and his family were still living with his in-laws.

¶6       On May 5, Baca filed a political committee statement of organization identifying the Relation Street house as his residence. On May 14, he filed his nomination papers and an initial set of nominating petitions. Ultimately, Baca submitted petitions with 145 valid signatures, significantly more than the 53 signatures required to qualify as a candidate. The petitions

identified the Relation Street house as his residence.

¶7    The superior court found that Baca resided at the Relation Street house from May 4 to May 15, and thereafter resided with his in-laws at another house within JP1. The trial judge also rejected Griffith's arguments that Baca was not an elector in JP1 because (1) he had not validly changed his address on the voter registration form to reregister in JP1, or (2) after Baca submitted his early ballot in JP2 on April 28, he could not reregister in JP1 until after May 18, 2010 – the date of the special election.

## II.

¶8    Griffith makes two legal arguments before this Court. He argues that Baca could not change his voter registration to a different precinct merely by striking out the former address and interlining a new one without re-signing the form under oath. Alternatively, he argues that Baca could not be registered simultaneously in JP2 for purposes of casting his early ballot for the May 18 special election and in JP1 for purposes of submitting his nomination papers on May 14. Griffith does not challenge the superior court's conclusion that Baca was a resident of JP1 as of May 4.

¶9    The key statute is A.R.S. § 16-311(A) (2006), which provides that "[a] candidate for public office shall be a qualified elector at the time of filing and shall reside in the

4

county, district or precinct which the person proposes to represent." *Cf.* Ariz. Const. art. 7, § 15 (providing that a candidate "shall be a qualified elector of the political division or municipality in which such person shall be elected"). A "qualified elector" is a person "qualified to register to vote pursuant to § 16-101 and . . . properly registered to vote." A.R.S. § 16-121(A) (2006).

¶10    In their briefing before this Court, Griffith and Baca interpret § 16-311(A) to require candidates like Baca to be registered to vote in the relevant precinct (and therefore a resident of that precinct) when they file nomination papers. We will assume for purposes of this case that this interpretation is correct, although the language of § 16-311(A) arguably could support a different reading. *Cf.* A.R.S. § 11-402 (2001) (providing that "[a] person shall not be eligible for a county office . . . unless he is, at the time of his election or appointment . . . an elector of the county or precinct in which the duties of the office are to be exercised"); *Nicol v. Superior Court*, 106 Ariz. 208, 473 P.2d 455 (1970) (construing § 11-402 to require residency within precinct at time of election for justice of the peace candidates).

¶11    We are not persuaded by Griffith's argument that Baca did not validly change his registration because he did not submit a new voter registration form with the Relation Street

5

address or re-sign the previous form.  Under A.R.S. § 16-135 (2006), an elector who moves within the same county may change his registration address by: (1) reregistering at the new address; (2) voting a provisional ballot on election day at the appropriate polling place by presenting identification showing the new address and affirming the new address in writing; or (3) correcting the address on a written request for an early ballot that includes the elector's new address, affirmation, and signature.

¶12     Baca reregistered at the Relation Street address when, consistent with the instructions of the Recorder, he corrected his address on the previous form and resubmitted it to her, still bearing his signature and acknowledgement that false registration is a class 6 felony.  Because Baca corrected his signed form in the Recorder's presence and returned it directly to her, we agree with the superior court that he reaffirmed his signature on the form with the new address.  Although it might have been preferable for Baca to have completed a new registration form, the signature requirements of A.R.S. §§ 16-121.01 (2006) and 16-152 (2006) ensure that the registrant is correctly identified and recognizes the consequences of submitting false information.  Those purposes were met here.

¶13     We also are not persuaded by Griffith's argument that Baca could not reregister in JP1 before the May 18 special

election once he submitted an early ballot in JP2. Arizona statutes do not preclude voters from changing their registration pending an election in which they submit an early ballot. Instead, if an elector requests an early ballot and moves to a different precinct before election day, the elector may still reregister to reflect the change of address. In that event, the statutes preclude the elector from casting two votes in the same election by providing that any provisional ballot in the new precinct will not be counted if the elector has already voted. *See* A.R.S. § 16-135(D). An elector can be registered to vote in a precinct without necessarily being eligible to cast a vote there in a particular election. *See* A.R.S. § 16-120 (2006) (generally requiring elector to be registered within a voting district twenty-nine days preceding an election in order to be eligible to vote). Thus, Baca's early vote in JP2 for the May 18 statewide election did not prevent him from reregistering on May 4 or 5 in JP1; it merely prevented him from voting again in the same election.

### III.

¶14     For the foregoing reasons, we affirm the judgment of the superior court.

_____
W. Scott Bales, Justice

7

CONCURRING:


_____
Andrew D. Hurwitz, Vice Chief Justice


_____
A. John Pelander, Justice

8